USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec. 8, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------- X
UNITED STATES AVIATION          :
UNDERWRITERS, INC.,             :
                                :
                Plaintiff,      :
                                :        No. 15 Civ. 5216 (JFK)
     - against -                :
                                :        **OPINION & ORDER**
TEXTRON INC.                    :
                                :
                Defendant.      :
--------------------------------- X

**JOHN F. KEENAN, United States District Judge:**

Before the Court are two separate but related motions.  The
first is a motion by Plaintiff United States Aviation
Underwriters, Inc. ("USAU") to remand this case back to New York
State Supreme Court pursuant to 28 U.S.C. § 1447(c).  The second
is a motion by Defendant Textron Inc. to dismiss the complaint
under Federal Rule of Civil Procedure 12(b)(6).  For the reasons
that follow, Plaintiff's motion to remand is granted.  The Court
will therefore abstain from deciding Defendant's motion to
dismiss.

## I. Background

The following facts are taken from the complaint and are
assumed true only for purposes of the pending motions.
Defendant Textron, a Delaware corporation with its principal
place of business in Providence, Rhode Island, is a multi-
industry company that owns various aviation-related
subsidiaries.  Plaintiff USAU is a New York corporation with its

principal place of business in New York City.  USAU serves as the manager and underwriter of aviation policies issued by the United States Aircraft Insurance Group ("USAIG"), an insurance provider comprised of several subscribing insurance companies.

The parties' relationship began in 1985, when Textron purchased the first in a series of aviation insurance policies (the "Policies") from USAU.  These Policies, which provided Textron with insurance coverage against claims for bodily injury, property damage, and aircraft grounding, excluded certain deductible costs which Textron was responsible for paying.  Nevertheless, the Policies gave USAU—as the "Lead Insurer"—the "sole option" of paying any costs that were within the deductible amounts on Textron's behalf. (Compl. ¶ 9.)  Where USAU chose to cover Textron's deductible costs, the Policies provided that Textron would "promptly reimburse" USAU. (Id.) The Policies also gave USAU power to "institute and maintain suits in its own name against Textron for breach of any obligations arising" under the Policies. (Id. at 12.)

From 1985 until 2010, the Policies were renewed by Textron and USAU on a yearly basis on essentially the same terms and conditions.  During this time, USAU repeatedly advanced funds to pay losses and claims expenses that fell within Textron's deductible amounts.  These advances were documented in billing

statements or "bordereaux" that USAU provided to Textron each month. (Id. ¶¶ 16-17.)

Following the expiration of the 2010 Policy, Textron ceased purchasing insurance from USAU and replaced USAU as its Lead Insurer.  Shortly thereafter, USAU made a demand on Textron for a net balance of $2,377,160.96 due to USAU for costs paid on Textron's behalf "prior to June 2011." (Id. ¶ 19.)  In response, Textron apparently "asked a great many detailed questions" and "requested voluminous documentation," but otherwise failed to comply with USAU's demand for payment. (Id. ¶¶ 19-21.)  As a result, on February 17, 2015, USAU filed the present action in New York State Supreme Court, asserting claims under New York law for breach of contract and an account stated.  Plaintiff seeks a judgment against Textron for $2,377,160.96 plus interest, costs and disbursements, and attorney's fees. Thereafter, on July 6, 2015, Textron removed this action to federal court on the basis that there is complete diversity between itself and USAU. See 28 U.S.C. § 1332.

On September 4, 2015, Defendant filed the instant motion to dismiss, asserting (1) that USAU's breach of contract claim is at least partially time barred under New York's six-year statute of limitations because it seeks to recover payments made before February 17, 2009 and (2) that, in any event, the complaint fails to plead facts needed to support Plaintiff's claims for

breach of contract or an account stated.   In response, Plaintiff filed a memorandum opposing the motion to dismiss and, on September 25, 2015, filed a motion to remand the case to New York State court, arguing that the Court lacks diversity jurisdiction because Textron is not diverse from every subscribing company of USAIG.   Specially, USAU contends that both Textron and at least one of the USAIG subscribing companies—General Reinsurance Corporation—are Delaware citizens.

## II. The Motion to Remand

### A.   Legal Standard

On a motion for remand, the burden is on the defendant to establish that removal was appropriate. See Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004). The removal requirements are construed narrowly and any doubts are resolved against removal. See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007).   Moreover, where a motion to remand is based on a district court's lack of subject matter jurisdiction, the court must accept the material factual allegations contained in the complaint. See Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir.1992).   At the same time, the court may also consider affidavits or other evidence outside the pleadings in order to resolve disputed jurisdictional factual issues, but may not draw "argumentative inferences favorable to

4

the party asserting jurisdiction." <u>See</u> <u>id.</u>; <u>see also</u> <u>Filatech</u>
<u>S.A. v. France Telecom S.A.</u>, 157 F.3d 922, 932 (2d Cir.1998).

## B. Discussion

In asserting that removal to federal court was proper,
Textron argues that USAU's citizenship controls for purposes of
diversity jurisdiction, asserting that USAU—not USAIG or its
subscribing companies—is the real-party in interest because it
"plainly seeks to 'vindicate its <u>own</u> rights'" under the
insurance policies issued to Textron. (Opp. at 6-7 (quoting
<u>Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.</u>,
411 F. Supp. 2d 458, 463 (S.D.N.Y. 2006)).)  Alternatively,
Textron suggests that USAU's citizenship is controlling because
the subscribing companies "assigned to USAU the authority to
bring a binding action on their behalf." (<u>Id.</u> at 1, 9 (emphasis
removed); <u>see</u> <u>Drexel Burnham Lambert Group, Inc. v. Galadari</u>,
610 F. Supp. 114, 117 (S.D.N.Y. 1985), <u>aff'd in part and vacated</u>
<u>in part</u>, 777 F.2d 877 (2d Cir.) (suggesting that, where an
assignment is made for "facially . . . valid business purposes,"
the residence of the assignee controls for diversity purposes).)
Thus, Textron contends that federal jurisdiction is proper in
this case because there is complete diversity between USAU and
Textron. <u>See</u> 28 U.S.C. § 1332.  The Court disagrees.

Federal diversity jurisdiction is limited to controversies
between "citizens of different States." 28 U.S.S. § 1332(a)(1).

5

Further, the Supreme Court has made clear that the "citizens" upon whose citizenship diversity jurisdiction is based must be "real and substantial parties to the controversy" at issue. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460 (1980); Hilton Hotels Corp. v. Damornay Antiques, Inc., No. 99 Civ. 4883, 1999 WL 959371, at *2 (S.D.N.Y. Oct. 20, 1999).  Although this standard is similar to Rule 17(a)'s requirement that actions "must be prosecuted in the name of the real party in interest" (Fed. R. Civ. P. 17(a)), the standard is not the same; rather, "the two rules serve different purposes and need not produce identical outcomes in all cases." Navarro, 446 U.S. at 462 n.9.

The issue of whether a named plaintiff is a real and substantial party was directly addressed by the Second Circuit's decision in Oscar Gruss & Son, Inc. v. Hollander, wherein the court drew a clear distinction between "a plaintiff who sues solely in his capacity as an agent, on the one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation." See Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 194 (2d Cir. 2003).  Where a plaintiff brings a suit solely in his representative capacity, the Second Circuit indicated that the "citizenship of the represented party, and not that of the representative, controls." Id.; see also Airlines Reporting Corp. v. S and N Travel, Inc., 58 F.3d 857, 862 (2d Cir. 1995)

6

(holding that the named plaintiff was not a real and substantial party to the controversy where it "did not seek to protect any corporate interests of its own," did not suffer "any corporate damage or pecuniary loss itself," nor did it "lay claim to any portion of the potential recovery").  By comparison, the Second Circuit concluded that Oscar Gruss & Son, Inc. was "not a mere conduit but possesse[d] a valid stake in the litigation sufficient to be considered a real and substantial party for diversity purposes," because Oscar Gruss had personally suffered a pecuniary loss and would be entitled to a share of any damages awarded. See Oscar Gruss, 337 F.3d at 194 (internal quotation marks omitted).

Here, USAU's unchallenged right under the Policies to bring this action does not mean that its citizenship controls for diversity purposes.  Rather, in order for USAU to be considered a real and substantial party to the controversy for diversity purposes, Textron must show that USAU has an actual "stake in the litigation." See id.  Despite Textron's arguments to the contrary, however, the pleadings and documentary evidence submitted in support of the present motion indicate (1) that USAU seeks to enforce Textron's obligation to reimburse payments funded exclusively by the USAIG subscribing companies (see Pl. Mem. at 3; ECF No. 28, Lichte Decl. ¶¶ 7-8), (2) that USAU does not claim to have been damaged or harmed in its personal

7

capacity by Textron's alleged failure to repay the amounts claimed in this case (see Reply at 3; Lichte Decl. ¶¶ 2-8), and (3) that USAU has not laid claim to any portion of the potential recovery (Reply at 4; Lichte Decl. ¶¶ 7-8).[1]  Thus, unlike the plaintiff in Oscar Gruss, the record indicates that USAU has brought this case as a conduit for USAIG and not to advance its own interests in the litigation.

Textron's argument that USAU has brought this case as an assignee of the USAIG subscribing companies similarly fails. Importantly, there is nothing in the complaint or supporting documents to indicate that USAIG intended to transfer ownership of its claims in this case to USAU; rather, USAU has consistently maintained that it brought this case as agent for the USAIG companies and that the "ultimate right to the return of USAIG funds" belongs to the individual USAIG companies. (See

---

[1] In reaching this conclusion, the Court rejects Textron's contention that USAU has an actual stake in the outcome of this litigation because USAU may be held liable to the subscribing companies "if it improperly advanced expenses or allowed the statute of limitations to run on claims it had against any named insurers." (Opp. at 7-8.)  Contrary to Textron's argument, the mere possibility that USAU may indirectly benefit from any funds recovered from Textron because it might otherwise be held liable as a fiduciary for those same funds, without a more definite interest, is insufficient to make USAU a real and substantial party for diversity purposes. See, e.g., Boston Post Road Medical Imaging, P.C. v. Allstate Ins. CO., No. 03 Civ. 6150, 2004 WL 830154, at *2 (S.D.N.Y. Apr. 13, 2004) (concluding that the named plaintiff was not suing in a representative capacity because it had purchased the claims at issue and was therefore "the only plaintiff that has an interest in recovering monies allegedly owed").

Reply at 7; see also Advanced Magnetics, Inc. v. Bayfront
Partners. Inc., 106 F.3d 11, 18 (2d Cir. 1997) (finding that the
delegation of authority "to commence and prosecute to final
consummation or compromise any suits, actions or proceedings"
did not constitute an assignment because there was no evidence
of an intention "to transfer title or ownership" of the claims
at issue).)

Accordingly, because the allegations in the complaint,
together with the terms of Policies, indicate that USAU has
commenced this action in its representative capacity on behalf
of the USAIG subscribing companies, USAIG—and not USAU—is the
real and substantial party to this case for purposes of
diversity jurisdiction.  Thus, this Court lacks federal
jurisdiction unless Textron can demonstrate that it is diverse
from all of the USAIG subscribing companies. See United Food &
Commercial Workers Union, Local 919 v. Centermark Props, Meriden
Square, Inc., 30 F.3d 298, 303 (2d Cir. 1994) (noting that the
citizenship of an unincorporated association "is determined by
the citizenship of each of its members").  It has not done so.
Specifically, the parties agree that Textron is a Delaware
corporation with its principal place of business in Providence,
Rhode Island.  Similarly, at least one of the USAIG subscribing
companies—General Reinsurance Corporation—is incorporated in,

and is thus a citizen of, Delaware.  Consequently, the Court lacks diversity jurisdiction over this case and, in the absence of any other basis for federal jurisdiction, must therefore grant Plaintiff's motion to remand.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion to remand this action to New York State court is granted.  Further, because the Court finds that it lacks jurisdiction over the present case, it will abstain from deciding Defendant's pending motion to dismiss. To the extent that such a motion is appropriate, it must be raised in New York State court.

**SO ORDERED.**

Dated:      New York, New York
            December 7 , 2015

_John F. Keenan_
John F. Keenan
United States District Judge